IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALEXIS MEDINA-PEREZ and DANIEL RUIZ-MUÑIZ<br><br>Plaintiffs<br><br>vs<br><br>EDWIN SANCHEZ, in his individual and official capacities; GONZALO GONZALEZ-SANTINI, in his individual and official capacities; MIGUEL CALIMANO, in his individual and official capacities; and ALVARO PILAR-VILAGRAN, in his official capacity as Executive Director of the Puerto Rico Ports Authority<br><br>Defendants | CIVIL 09-2010CCC |

**STATEMENT OF REASONS**

The Court having granted on September 30, 2011 the motions for summary judgment filed by defendants Edwin Sánchez (Sánchez) and Gonzalo González-Santini's (González) against plaintiff Daniel Ruiz (Ruiz) (docket entry 39), and the motion for summary judgment against plaintiff Alexis Medina (Medina) (docket entry 40), both of which plaintiff opposed (docket entry 53), it now gives its Statement of Reasons (see Order of September 30, 2011, docket entry 72).

Plaintiffs' suit is based on the alleged violation of their civil rights in the form of harassment and discrimination due to their political affiliation. Plaintiff Medina is an Auxiliary Electrician at the Rafael Hernández Airport in Aguadilla, Puerto Rico. He is a member of the New Progressive Party (NPP). Ruiz is an electrician at the same airport and also belongs to the NPP. Defendant Sánchez, who is plaintiffs' supervisor and co-defendant, Alvaro Pilar-Vilagrán (Pilar), the Executive Director of the Puerto Rico Ports Authority, belong to the NPP, the same party as the plaintiffs. Defendant González, the airport manager at the time of the events alleged, is a member of the opposing political party, the Popular Democratic Party (PDP).

CIVIL 09-2010CCC                                    2

Plaintiffs have filed this suit alleging political discrimination as follows:

17. The Plaintiffs' position requires them to perform [a]s Electricians in various airports, including those in Aguadilla, Arecibo and Ponce.

18. Defendant González has systematically ignored the Plaintiffs and has taken different measures to prevent them from performing their official job duties. As a result of those, Plaintiffs have systematically [been deprived of the adequate performance of their job duties and treated differently within the work area in such manner, that results in their working conditions being unreasonably lower to the norm.

Amended Complaint at 4.

The discriminatory actions, as alleged in the amended complaint, and that are said to have occurred between May 2008 and May 2009, are the following:

¶19.  González "prohibited plaintiff from using an office used as a rest area by the rest of the employees.  Eventually González ordered defendant Sánchez, in writing, to keep plaintiffs in a separate room, apart from their fellow co-workers, when they are not assigned any job duties."

¶¶20-23.  González removed a punch-clock station that plaintiffs previously used to report for work that was near the warehouse in which their equipment was stored.  As a result, they had to spend more time going through security check points in punching in and out, which cut  time out of their work day in order to punch out at their lunch break and at quitting time.  Plaintiffs contend that they were subjected to a harassment campaign about the quality and quantity of their work output and that work orders were changed at the last minute, in violation of the Collective Bargaining Agreement.

¶24.  "Sánchez would also foster [González' admonishments to plaintiffs] by distributing to the plaintiffs work orders that were outside their job descriptions and then refusing to comment or discuss these job orders and the job description when the plaintiffs sought to clarify or discuss the same."

¶27.  During Holy Week of 2009, González tried to frustrate the plaintiffs' plans to take the Thursday before Good Friday off, whereas other brigade workers were allowed to

CIVIL 09-2010CCC                         3

take it charged to vacation.  They allege that González tried to prohibit them from advancing their work orders to free up the half day they were supposed to work.  "The plaintiffs continued to work despite González' objections, as a result González issued a written reprimand on April 14, 2009, which the plaintiffs had to grieve [to their Union] to have it eliminated, thus causing stress, anger and a waste of time to the plaintiffs."

¶28.  "On various occasions, defendant González has made derogatory comments regarding plaintiffs' political affiliation.  Such humiliations have been overlooked deliberately and openly by Sánchez.

¶29.  Plaintiffs aver that the harassment campaign ended in May 2009, when González was transferred to the Mayagüez Airport as a result of his harassment of the plaintiffs.  "However, he has threatened plaintiffs from his current position at PRPA."

I.     SUMMARY JUDGMENT STANDARD

Summary Judgment "is proper if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law."  Rule 56 of the Federal Rules of Civil Procedure; Sands v. Ridefilm Corp., 212 F.3d. 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina Vargas, 168 F.3d. 42, 45 (1st Cir. 1999).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  DeNovellis v. Shalala, 124 F.3d. 298, 306 (1st Cir. 1997).  The nonmoving party must establish the existence of at least one relevant  and material fact in dispute to defeat such a motion.  Brennan v. Hendrigan, 888 F.2d 129 (1st Cir. 1989).

The purpose of a summary judgment motion is to "pierce the boilerplate of the pleadings and assay the parties proof in order to determine whether trial is actually required."  Wynne v. Tufts University, 976 F.2d 791, 794 (1st Cir. 1992).  The Court must look at the record in the light most favorable to the non-moving party; however, the Court need not rely on unsubstantiated allegations.  To defeat a motion for summary judgment,

CIVIL 09-2010CCC                              4

evidence offered by non-movant "must be significantly probative of specific facts." <u>Prescott</u> <u>v. Higgins</u>, 538 F.3d. 32, 40 (1st Cir. 2008); <u>Pérez v. Volvo Car Corp.</u>, 247 F.3d. 303, 317 (1st Cir. 2001).   We may ignore "conclusory allegations, improbable inferences and unsupported speculation." <u>Prescott</u>, at 40.

A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it has the potential of determining the outcome of the litigation.  The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial."  [A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." <u>RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.</u>, 49F.3d 399, 401 (8thCir.1995).

That is, the non-moving party may only overcome the motion with evidence sufficient to raise a genuine issue of fact that is both relevant and material.  <u>See</u> <u>Daury v. Smith</u>, 842 F.2d 9, 11 (1st Cir. 1988); <u>Cruz v. Crowley Towing</u>, 807 F.2d 1084 (1st Cir. 1986).  That is, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion [. . .]." <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).

On issues where the nonmovant bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying on evidence that is "merely colorable" or "not significantly probative".  Rather, the nonmovant  must present definite, competent evidence to rebut the motion.  <u>Pagano v. Frank</u>, 983 F.2d 343, 347 (1st Cir. 1993), citing <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991).  Summary judgment is appropriate even when elusive concepts like motive or intent are in play if the non-moving party  rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.  <u>Feliciano v. El Conquistador</u>, 218 F.3d 1 (1st Cir. 2000); <u>Medina Muñoz v.</u>

CIVIL 09-2010CCC                              5

R.J. Reynold Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  Therefore, the nonmoving party's

failure to advance evidence establishing the essential elements of the cause of action, and

for which they have the burden of proof, warrants the dismissal of the case through

summary judgment.  Celotex v. Catrett, 477 U.S. 37 (1986).

     Plaintiffs' opposition (docket entry 53) to the two summary judgment motions consists

of a total of two pages plus the certificate of electronic filing.  Their entire argument, which

follows, is based on their "perception":

          ¶2.  As stated in the opposition to the statement of material facts the
     incidents could be perceived both objectively and subjectively in different ways
     by different persons.

          ¶3.  A jury could well agree with plaintiffs' perception and find in their
     favor.

          ¶4.  The perception of plaintiffs is a factor to be considered as cited by
     defendant in the case of Faragher v. City of Boca Raton., 524 U.S. 775,
     787 (1998).

     Local Rule 56(c) requires "a party opposing a motion for summary judgment to

accept, deny, or qualify each entry in the movant's statement of material facts paragraph by

paragraph and **to support any denials, qualifications, or new assertions by**

**particularized citations to the record.**"  Cabán Hernández v. Philip Morris USA, Inc.,

486 F.3d 1, 6-7 (1st Cir. 2007) (our emphasis).  If the party opposing summary judgment

fails to comply with Local Rule 56(c), "the rule permits the district court to treat the moving

party's statement of facts as uncontested."  Alsina-Ortiz v. Laboy, 400 F.3d 77, 80

(1st Cir. 2005).

     The purpose of this "anti-ferret rule" is to require the parties to focus the district

court's attention on what is, and what is not, genuinely controverted.  Id., see also Cabán

Hernández, supra, at 7.  Otherwise, the parties would improperly shift the burden of

organizing the evidence presented in a given case to the district court.  Id., at 8; Alsina-Ortiz,

supra, at 80.  Local Rule 56 is intended to prevent parties from shifting to the district court

CIVIL 09-2010CCC                                    6

the burden of sifting through the inevitable mountain of information generated by discovery in search of relevant material.  Ríos Jiménez v. J. Principi, 520 F.3d. 31, 38 (1st Cir. 2008). Given Local Rule 56(c)'s important purpose, this Court has repeatedly upheld its enforcement, stating that litigants ignore it "at their peril."  Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003).  Local Rule 56(c) requires "a party opposing a motion for summary judgment to accept, deny, or qualify each entry in the movant's statement of material facts paragraph by paragraph and to support any denials, qualifications, or new assertions by particularized citations to the record."  Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 6-7 (1st Cir. 2007).

Included with the opposition is a **four-page document** entitled "Opposing Statement of Material Facts" that in no way complies with Local Civil Rule 56(c)."  None of plaintiffs' statements indicate whether they are admitting, denying or qualifying the defendants' uncontested fact.  Instead, they merely refer to the "plaintiff's perception."  Examples of the type of answers are the following:

As to plaintiff Ruiz:

1. Paragraph 2.1 fails to correctly state the perception plaintiff had of defendant, Gonzalo González, as stated at the deposition.

2. Paragraph 2.2 fails to state the incident was an example of coercion in attempting to deny plaintiffs of their right to a holiday without any exigent circumstances being present and also fails to correctly state the perception plaintiff had of defendant, Gonzalo González, as stated at the deposition.

3. Paragraph 2.4 fails to correctly state the perception plaintiff had of defendant, Gonzalo González, as stated at the deposition, of what can be described as a failure to follow the chain of command on the part of defendant.

4. Paragraph 2.4 fails to correctly state the perception plaintiff had of defendant, Gonzalo González, as stated at the deposition, of what can be described as a failure to follow the chain of command on the part of defendant.

5. Paragraph 2.5 fails to correctly state the perception plaintiff had of defendant, Gonzalo González, as stated at the deposition, of what can

CIVIL 09-2010CCC                              7

be described as a coercion upon plaintiff to waive his labor rights as a union employee.

6.    Paragraph 2.5 Fourth Incident fails to correctly state that the communication was selectively sent to plaintiffs and no one else on the brigade, and also fails to correctly state the perception plaintiff had of defendant, Gonzalo González, as stated at the deposition.

As to plaintiff Medina:

7.    Paragraph 2.1 through 2.4 fails to properly characterize the decrease in work efficiency by relocating the punch clocks thereby affecting plaintiffs' work performance and morale, and also fails to state the perception plaintiff had of defendant, Gonzalo González, as stated at the deposition.

8.    Paragraph 2.4 seems to describe musical chairs with no apparent work related reason behind the personnel changes.

9.    Paragraph 2.7 plays down the fact that plaintiff was coerced to use a vehicle which could expose him to a traffic violation on his driver's license and fails to correctly state the perception plaintiff had of defendant, Gonzalo González, as stated at the deposition.

Additionally, plaintiffs do not submit any Local Civil Rule 56(c) statement of fact. Therefore, they have provided no references to any evidence that supports the allegations of their complaint.  The First Circuit held that submitting an "alternate statement of facts," rather than admitting, denying, or qualifying a defendant's assertions of fact "paragraph by paragraph as required by Local Rule 56(c)," justifies the issuance of a "deeming order," which characterizes defendant's assertions of fact as uncontested.  Cabán Hernández, *supra*, at 7.  With no evidence  referenced by plaintiffs in support of their claims, we deem the defendants' uncontested facts as admitted.

**II.    ANALYSIS**

Plaintiffs' subjective perception, however, is not the standard by which discriminatory behavior is judged.  Faragher is distinguishable from the case before us in that it deals with sexual harassment, a topic in which the victim's perception requires consideration.  Even in that case, subjective perception is but one consideration.  In order to be actionable, the

CIVIL 09-2010CCC                                    8

sexual harassment must be objectively **and** subjectively offensive, **one that a reasonable person would find hostile or abusive**, as well as one that the victim, in fact, did perceive to be so.  Faragher, *supra*, at 787.

        Summary Judgment may be appropriate even in cases involving discriminatory animus when the evidence of motive adduced by the party opposing the motion hinges on unsupported conjecture.  This Court, in Torres Santiago v. Fajardo, 70 F.2d 2 (D.P.R. 1999), soundly rejected subjective perception alone as evidence of political discrimination:  "All plaintiff has presented to prove political discrimination is her 'perception' of the events during the meeting, without any independent concrete factual basis."  Id., at 75-76.  "The record is devoid of any evidence establishing political animus in this case.  Only plaintiff's groundless conjectures appear in the record in opposition to the summary judgment request."  Id., at 76.  See also Ali v. University of Massachusetts Medical Center, 76 Fed. Appx. 342 (1st Cir. 2003), citing Pilgrim v. Trustees of Tufts College, 118 F.3d. 864, 871 (1st Cir. 1997), which notes that "a plaintiff's subjective perception is not evidence of discriminatory intent, and, hence, not enough to withstand summary judgment."

        In discussing Title VII discriminatory acts of retaliation, the Supreme Court has stated:

    In our view, a plaintiff must show that a reasonable employee would have
    found the challenged action materially adverse . . . .

        We speak of *material* adversity because we believe it important to
    separate significant from trivial harms . . . .

    We refer to the reactions of a *reasonable* employee because we believe that
    the provision's standard for judging harm must be objective. An objective
    standard is judicially administrable. It avoids the uncertainties and unfair
    discrepancies that can plague a judicial effort to determine plaintiff's unusual
    subjective feelings.

Burlington Northern & Santa Fe Railway Co., 548 U.S. 53, 68-69 (2006) (emphasis in the original).

CIVIL 09-2010CCC                              9

Having determined that defendants' statement of facts are uncontested, we turn to

the plaintiffs' deposition transcripts, to provide a more complete picture of the events about

which they complain:

**Daniel Ruiz' Deposition Testimony**:

Q:    Okay, Tell me , what made you decide to file a complaint, in Federal
      Court?

A:    We did that simply as a result of the conduct of Mr. Gonzalo González.

Q:    Could you please explain what was that attitude?

A:    It's an attitude of arrogance, persecution, admonishments.

Q:    What else?

A:    Based upon that, he failed to follow work protocols, giving orders
      outside of the protocol, since it's the supervisor, who needs to give the
      orders directly.  And thus, creating a hostile environment, therefore
      creating problems at work, because if somebody gave orders, and
      another did the same, then it created a lot of problems.

Tr. p. 6, l. 8 - p. 7, l. 7 (docket entry 39-2).

Q:    Okay, now, so that Edwin Sánchez, did not create problems for you?

A:    Edwin Sánchez is there, because he gave me a document, who,
      Mr. Gonzalo González, gave him, to in turn, to give us.  To me, and to
      my assistant.

Id. Tr. p. 7, lns. 12-16.

Ruiz goes on to explain than Sánchez was not the one causing problems,

Id. Tr. pp. 7-8  and  that González was arrogant, "[h]e would go directly himself, outside of

the order, through supervisors, in a very tough, and very severe manner."  Id. Tr. p. 8,

lns. 9-11.

The alleged incident regarding Holy Week is related by Ruiz at pages 9-10 of his

deposition.  When he told González that they were providing maintenance to generators

because they were not going to be working on Holy Thursday, defendant told him that

". . . the director didn't say that we would not be working here Thursday."  And then told Ruiz,

"Well, you're not a boss;" that he couldn't order anything.  At page 10, Ruiz related another

so-called incident in which he had been scheduled to take vacations, but he had no vacation

leave time remaining.   When Ruiz informed González, the latter "became annoyed, he

actually hit his fist against the table," stating Ruiz "wasn't the boss, . . . couldn't give orders,

and . . . had to take vacations without wanting."  Id.

> With regard to the letter quarantining him and Medina, Ruiz stated at his deposition:
>
> Q:     . . . Okay, and now, we covered the area of arrogance, and now I'm
>        trying to determine, if the incidents that you told me, a few minutes ago,
>        are also, encompass the persecution characteristic objective, that you
>        gave to Gonzalo González.
>
> A:     My understanding is that, that was persecution because, at some given
>        point, he gave us a document, to myself, and to my assistant, just for
>        us two, and not for the whole brigade.
>
> Q:     And what was that document?
>
> A:     **It was a letter, passing down some instructions, as to basically,
>        kind of quarantined us.**
>
> Q:     Why do say, 'Acuarentenarnos'?
>
> A:     **The document stated that, whenever we were near the lobby area,
>        and our work area, he did not want to see us, and that we go to an
>        office, not to the shop, but rather to an office, to lock ourselves in.**
>
> Q:     Do you have that document with you?
>
> A:     To Counsel, with Counsel.

Id. Tr. p. 1, ln. 23 - p. 12, ln. 17.

> What was produced by plaintiffs in response to the Court's order (docket entry 65 )

to file this letter was a photocopy of a handwritten, unsigned list on lined paper. At the top

of the list is written the name "Edwin". The right margin and part of the text of each line is

missing.  In the list is the following partial statement: "If they don't have work to do, p [ text

cut off] at the office for control of same."[1] (Certified translation) on the lower part of the page, in an unlined portion, there is a handwritten, unsigned note in a different handwriting, that states, "Orders from Mr. Gonzalo González - Manager Airpo [text cut off] Delivered by Mr. Edwin Sánchez - Supervisor On this day April 14, 2009 at 8:30 am."[2] The list does not identify to whom it is addressed, other than "Edwin". The single sentence does not support plaintiffs' contention of quarantine based on political affiliation.

Beside the fact of González giving direct orders instead of going through his immediate supervisor, and the incidents of Holy Week, the "quarantine," and González wanting him to take vacation, Ruiz could not think of any others that he could raise at trial. (Id. Tr. p. 27).

**Medina's Deposition Testimony**:

With regard to the elimination of the punch clock station where they had previously punched in, Medina stated that approximately 10 to 12 persons had used that station. (Docket entry 40-2), Tr. p. 14. He admitted that he did not know why González eliminated it. Id. Afterward, all the electricians and the secretaries in administration had to use the punch clock in the terminal. Id. Tr. p. 15. Medina claims political discrimination by González "as a result of the things that were happening, in terms of the supervisors which were switched just for us two, and the work pressures" . . . "Every once in a while a supervisor would arrive, and would change myself, or change the other electrician, or would change us from that supervisor to another. This, on several occasions, happened that way." Id. Tr. p. 18. Medina did not explain how this evidences political discrimination. Similarly,

---

[1]In Spanish: "Si no tienen trabajo que realizar p[ text cut off] en oficina para control de éstos."

[2]In Spanish: "Ordenes del Sr. Gonzalo González - Gerente Aerop [text cut off] Entregadas Puerto Rico el Sr. Edwin Sánchez - Supervisor Hoy dia 14 de Abril de 2009 a las 8:30 am."

with the punch-clock removal, he did not allege that only NPP members were affected by the switch.

Medina also stated that he filed this federal claim because González drafted a written letter to Sánchez whereby he sent plaintiffs to carry out some tasks which pertained or belonged to the mechanics, such as providing maintenance to the vehicle, and only allowed them a single day to complete the task. Id. Tr. p. 20. Another so-called incident with González involved his asking plaintiffs to drive a vehicle through the streets that was lacking its registration sticker. As Medina explained, at Id. Tr. p. 23, "[w]e asked the police officers who do rounds there at the terminal if that could be done, and they told us, no, that that could not. At that point, Mr. Gonzalo González arrived, and he became annoyed with me because I had asked the police officers precisely if the vehicle could be run like that, so he got annoyed with me." Medina continued at p .25, "[b]ecause when we were asking the police officers, González arrived. He told us – at least in my personal case – 'if you're going to deal with it that way, let me know.' That's what he told me. And from that point, that's why I understood that he had previously spoken to the police officers, in terms of moving the vehicle."

The only other incident reported by Medina, involving the driving to San Juan on work-related business  using his own car, was withdrawn as an issue, for the record, by his attorney at his deposition. Id. Tr. pp. 84-85.[3]

Medina also acknowledged, at Id. Tr. p. 30, that his only claims as to Edwin Sánchez would  be that Sánchez gave him a letter with orders allegedly from González and, at Id. Tr. p. 44, his attorney stated that  the only reason for Alvaro Pilar being named in the

---

[3]"Mr. Alejandro:  I just want to state for the record that this third incident regarding the coming to San Juan in his own car – we will not be using that at trial for any purpose. . . .So I just wanted to say that for the record. . . . So I just want to say that as clearly as I can, so I don't have to discuss that in motions for sumary judgment, and oppositions, and whatnot. So, you may consider that waived as evidence of any show of dismissal scheme that I may establish, or seek to establish, in this case."

complaint was his status of Director, who would have to enforce any order for equitable or injunctive relief.

A *prima facie* case of political discrimination in violation of First Amendment requires evidence that (1) the public employee and the defendant belong to opposing political affiliations, (2) the defendant has knowledge of the employee's affiliation, (3) a challenged employment action occurred, and (4) political affiliation was a substantial or motivating factor behind the adverse employment action.  Martínez Vélez  v. Rey Hernández, 506 F.3d 32 (1st Cir. 2007) (quoting Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006).

The plaintiffs failed to cite any evidence to rebut the defendants' proposed uncontested statement of facts.  Both plaintiffs acknowledged they had no complaint against Edwin Sánchez, other than that he delivered instructions from González.   In their depositions, neither plaintiff presented a single one of González's purported "derogatory comments regarding plaintiffs'  political affiliation" that "subjected [them] to embarrassment and humiliation due to their political affiliation."  Complaint, ¶19.  Ruiz acknowledged that his real problem with González was the man's arrogance, a theme that ran through all of Ruiz's testimony.  There is nothing to link any of the perceived "incidents" — the change of punch clock station which affect about a dozen persons; González' displeasure at plaintiffs' unauthorized advancing of work in order to take off Holy Thursday and Ruiz's lack of remaining vacation days, plaintiffs' displeasure with following González's direct orders, and their perceived impropriety of several changes of supervisors – to partisan political discrimination.  The mere fact that an employee is displeased by an employer's acts does not elevate the acts to discrimination.

When requested by the court to produce the letter purportedly ordering them to remain "quarantined" in room, they could only produce what appears to be a list of instructions, of which part of each line is missing, and nothing to identify to whom or how many persons they are addressed.  There is no order to "defendant Sánchez, in writing, to

CIVIL 09-2010CCC                              14

keep plaintiffs in a separate room, apart from their fellow co-workers, when they are not assigned any job duties."  Complaint, ¶18.  None of plaintiffs' so-called incidents can be characterized as "measures to prevent them from performing their official duties."  Id. Besides the inconvenience of having to punch in and out at the new site, which affected many other employees in the same way, plaintiffs did not identify any negative effect on their work environment, pay or benefits.

In sum, neither plaintiff ever had <u>any claim</u> against their fellow NPP members Alvaro Pilar and Edwin Sánchez.  The Court finds that plaintiffs have failed to identify any adverse employment actions by Gonzalo González that could have been perceived by a reasonable employee as creating a work environment of persecution and harassment based on political discrimination.  This constitutes the Statement of Reasons for the dismissal with prejudice of this action against Edwin Sánchez and Gonzalo González.

SO ORDERED.

At San Juan, Puerto Rico, on October 13, 2011.


S/CARMEN CONSUELO CEREZO
United States District Judge